UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANNE WEST and TOM BROWN, | CIVIL ACTION NO. 3:19-CV-00617 (WWE) |
| Plaintiffs, | |
| v. | |
| ACORNS GROW, INC., | |
| Defendant. | JUNE 5, 2019 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

                                                                        **Page**

I. INTRODUCTION ...................................................................................................2

II. STATEMENT OF RELEVANT FACTS .................................................................3

III. LEGAL STANDARD ...............................................................................................4

IV. ARGUMENT .............................................................................................................5

       A.    Under its Plain Terms, Title III Only Applies to Businesses that Operate a Physical Facility. ...........................................................................................5

       B.    A Strong Majority of Courts Holds that the ADA Only Applies to a Website If, at a Minimum, It Has a "Nexus" to a Physical Location. .....................7

       C.    Congress Amended the ADA During the Internet Era but Never Added Websites as a Public Accommodation. ................................................................12

       D.    Acorns' Website Is Not Subject to the ADA, and This Case Should Be Dismissed. ...................................................................................................13

V. CONCLUSION ........................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Access Now, Inc. v. Blue Apron, LLC*,
   No. 17-CV-116-JL, 2017 WL 5186354 (D.N.H. Nov. 8, 2017)..................................................8

*Access Now, Inc. v. Sw. Airlines, Co.*,
   227 F. Supp. 2d 1312 (S.D. Fla. 2002) ........................................................................8, 11, 13

*Anderson v. Macy's Inc.*,
   No. 2:12-CV-00556, 2012 WL 3155717 (W.D. Pa. Aug. 2, 2012)...........................................8

*Andrews v. Blick Art Materials, LLC*,
   No. 17-CV-767, 2017 WL 3278898 (E.D.N.Y. Aug. 1, 2017)................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................4

*Belizaire v. Ahold U.S.A., Inc.*,
   No. 18 CIV. 5020 (LGS), 2019 WL 280367 (S.D.N.Y. Jan. 22, 2019) ...................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................4

*Buchholz v. Aventura Beach Assocs., Ltd.*,
   No. 17-23154-CIV, 2018 WL 318476 (S.D. Fla. Jan. 5, 2018)..............................................11

*C.M. v. Fletcher Allen Health Care, Inc.*,
   No. 5:12-CV-108, 2013 WL 4453754 (D. Vt. Apr. 30, 2013) .................................................4

*Camarillo v. Carrols Corp.*,
   518 F.3d 153 (2d Cir. 2008)......................................................................................................5

*Camreta v. Greene*,
   563 U.S. 692 (2011)................................................................................................................12

*Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England*,
   37 F.3d 12 (1st Cir. 1994).......................................................................................................11

*Carroll v. Nw. Fed. Credit Union*,
   No. 1:17-CV-01205, 2018 WL 2933407 (E.D. Va. Jan. 26, 2018) ...............................8, 9, 12

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ......................................................................................................7

*Cullen v. Netflix, Inc.*,
   880 F. Supp. 2d 1017 (N.D. Cal. 2012), *aff'd*, 600 Fed. Appx. 508 (9th Cir.
   2015) ...............................................................................................................................11

*Del-Orden v. Bonobos, Inc.*,
   No. 17 CIV. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) .................................7

*Doe v. Mutual Omaha Ins. Co.*,
   179 F.3d 557 (7th Cir. 1999) ...........................................................................................11

*Earll v. eBay, Inc.*,
   No. 5:11–CV–00262–JF HRL, 2011 WL 3955485 (N.D. Cal. Sept. 7, 2011),
   *aff'd*, 599 Fed.Appx. 695 (9th Cir. 2015) ..................................................................11

*Ford v. Schering–Plough Corp.*,
   145 F.3d 601 (3d Cir. 1998)..................................................................................8, 9, 13

*Gomez v. Bang & Olufsen Am., Inc.*,
   No. 1:16-CV-23801, 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) ............................................8

*Grand Trunk W. R.R. Co. v. United States Dep't of Labor*,
   875 F.3d 821 (6th Cir. 2017) ...............................................................................................7

*Haynes v. Dunkin' Donuts LLC*,
   741 F. App'x 752 (11th Cir. 2018) .......................................................................10, 11

*Haynes v. Pollo Operations, Inc.*,
   No. 17-CV-61003, 2018 WL 1523421 (S.D. Fla. Mar. 28, 2018)..........................................11

*J.H. by & through Holman v. Just for Kids, Inc.*,
   248 F. Supp. 3d 1210 (D. Utah 2017)..............................................................................7, 8

*Jancik v. Redbox Automated Retail, LLC*,
   No. SACV 13–1387–DOC, 2014 WL 1920751 (C.D. Cal. May 14, 2014) ............................10

*King v. Burwell*,
   135 S. Ct. 2480 (2015)...........................................................................................................7

*Magee v. Coca–Cola Refreshments USA, Inc.*,
   833 F.3d 530 ....................................................................................................................8, 9

*Markett v. Five Guys Enterprises LLC*,
   No. 17-CV-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017)....................................11

*Matson v. Bd. of Educ.*,
   631 F.3d 57 (2d Cir. 2011)....................................................................................................4

*Milner v. Dep't of Navy*,
  562 U.S. 562 (2011)..................................................................................................................7

*National Federation of the Blind v. Target Corporation*,
  452 F.Supp.2d 946 (N.D. Cal. 2006) .......................................................................................11

*Noah v. AOL Time Warner Inc.*,
  261 F. Supp. 2d 532 (E.D. Va. 2003) ........................................................................................9

*Noah v. AOL-Time Warner, Inc.*,
  No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004)..........................................................9

*Ouellette v. Viacom*,
  No. CV 10–133–M–DWM–JCL, 2011 WL 1882780 (D. Mont. Mar. 31, 2011)....................11

*Pallozzi v. Allstate Life Ins. Co.*,
  198 F.3d 28 (2d Cir. 1999)...................................................................................................9, 10

*Parker v. Metro. Life Ins. Co.*,
  121 F.3d 1006 (6th Cir. 1997) ...............................................................................................8, 9

*Rendon v. Valleycrest Prods., Ltd.*,
  294 F.3d 1279, 1283 (11th Cir. 2002) ......................................................................................8

*Robles v. Domino's Pizza, LLC*,
  913 F.3d 898 (9th Cir. 2019) ...................................................................................................10

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir.2007).......................................................................................................4

*Tsirelman v. DaMes*,
  794 F.3d 310 (2d Cir. 2015).......................................................................................................4

*Walker v. Sam's Oyster House, LLC*,
  No. CV 18-193, 2018 WL 4466076 (E.D. Pa. Sept. 18, 2018) ...............................................11

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 2000) ................................................................................8, 9, 12, 13

*Young v. Facebook, Inc.*,
  790 F.Supp.2d 1110 (N.D. Cal. 2011) .....................................................................................11

*Zaid v. Smart Fin. Credit Union*,
  No. CV H-18-1130, 2019 WL 314732 (S.D. Tex. Jan. 24, 2019)............................................7

**Federal Statutes**

42 U.S.C. § 12181................................................................................................................6, 9

42 U.S.C. § 12182 ........................................................................................................................5, 7

Americans With Disabilities Act of 1990, 42 USCA §§ 12101 *et seq.* ................................. *passim*

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................2, 4, 5, 13

**Regulations**

28 C.F.R. § 36.104 ............................................................................................................................6

**I.      INTRODUCTION**

This is the latest in the recent avalanche of website-accessibility lawsuits against businesses under the Americans with Disabilities Act ("ADA").  Able to generate multiple claims in a matter of minutes browsing the internet from home, visually-impaired plaintiffs and their attorneys are racing to sue businesses throughout the country for allegedly non-accessible websites.[1]

Here, visually-impaired plaintiffs Anne West ("West") and Tom Brown ("Brown") allege that defendant Acorns Grow, Inc.'s ("Acorns") website (www.acorns.com) is not fully compatible with their screen reader programs and deprives them of the full use and enjoyment of Acorns' *online* content and services in violation of Title III of the ADA.  These allegations fail to state a claim and should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Acorns' website is not a "place of public accommodation" under Title III of the ADA.  Acorns operates exclusively online—it has no physical, brick and mortar facility.  Plaintiffs acknowledge this much in their complaint; they claim they were deprived only of *online* content, goods, and services.  Under the plain language of the ADA and the majority view of courts

---

[1] In testimony before Congress in nearly twenty years ago in 2000, Walter Olson foresaw that extending Title III to cover company websites would likely subject businesses to many abusive discrimination claims:

> If it is easy pickings to walk down a town's main shopping street and find stores that you can hit with an ADA suit over their physical facilities, then it is even easier to browse the web and find websites that are arguably out of ADA compliance. In fact you could undoubtedly set up a robot to visit the sites for you and report back on their noncompliant status... [Y]ou could then proceed to file web-accessibility complaints by the bushel basket... [I]t is an obvious temptation for someone to start doing this kind of thing once the idea of lawsuits over web accessibility becomes a little more familiar.

Hearing on the ADA and Private Internet Sites: Testimony Before the House Comm. on the Judiciary, Subcomm. on the Const., 106th Cong. (2000) (statement of Walter Olson, Manhattan Institute).

nationwide, the Website is not subject to the ADA.  This Court should therefore dismiss this action.

## II.     STATEMENT OF RELEVANT FACTS

West alleges she is "totally blind," and Brown alleges he is "legally blind." (Complaint, ¶ 2-3.)  Both claim to use "screen readers" to "navigate the internet." (*Id*.)  According to Plaintiffs, Acorns is an "investment company" that "developed a mobile app, with a web-based version, that automatically invests change from linked accounts to enhance retirement savings." (*Id.* at ¶ 5.)  "Consumers may sign-up for Defendant's services and products, begin investing and benefit from educational services at http://www.acorns.com ("Website")." (*Id.* at ¶ 6.)  In addition, "consumers may also use the Website to purchase gift cards, receive educational material, review important legal notices like Defendant's Privacy Policy and Terms and Conditions, and more." (*Id.* at ¶ 7.)

Plaintiffs allege that "the Website is largely incompatible with the screen reader programs." (Complaint, ¶ 9.)  This allegedly "deprives blind and visually-impaired individuals the benefits of its online goods, content, and services." (*Id.* at ¶ 11.)  Plaintiffs allege they tried to access the Website from their respective homes, but due to "Defendant's failure to build its Website in a manner that is compatible with screen reader programs, Plaintiffs are unable to understand, and thus are denied the benefit of, much of the content and services they wish to access on the Website." (*Id.* at ¶ 25.)  Specifically, Plaintiffs claim they were denied "full and equal access to Defendant's *online* content and services." (*Id.* at ¶ 29) (emphasis added.)

Plaintiffs sue under the ADA and seek a permanent injunction requiring Acorns, among other things, to remedy its Website under the guidance of a qualified consultant approved by

Plaintiffs, to give its employees "accessibility training on a biennial basis," to periodically perform "automated accessibility audit[s]," to "perform end-user accessibility/usability testing … at least … quarterly," and to develop an accessibility policy disclosed on the Website, with contact information for users to report accessibility-related problems." (Complaint, ¶ 12.) As part of this injunction, Plaintiffs request that they and their lawyers and experts be charged with monitoring the Website for two years. (*Id.*)

### III.   LEGAL STANDARD

For a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. DaMes,* 794 F.3d 310, 313 (2d Cir. 2015). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.,* 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Although all allegations in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678.

Although courts ordinarily look only at the allegations in a complaint on a Rule 12(b)(6) motion, here the Court may consider the Website (www.acorns.com) because it referenced in and central to the Complaint. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *C.M. v. Fletcher Allen Health Care, Inc.*, No. 5:12-CV-108, 2013 WL 4453754, at *3 n. 1 (D. Vt. Apr. 30, 2013) ("Because the referenced websites are incorporated by reference in the Complaint,

4

they may be considered on a motion to dismiss."); *Belizaire v. Ahold U.S.A., Inc.*, No. 18 CIV. 5020 (LGS), 2019 WL 280367, at *3 n. 1 (S.D.N.Y. Jan. 22, 2019) ("The website is referenced in the Complaint and central to the Plaintiffs' allegations, so the website as it existed during the relevant time period may be considered on this motion.").

## IV. ARGUMENT

Title III only applies to businesses that provide goods and services from a physical facility. Plaintiffs' Complaint fails to allege that Acorns operates a physical facility or that there is any nexus between Acorns' Website and a physical location. Nor can they because Acorns operates only online. Consequently, pursuant to the express language of the ADA and caselaw construing it, Acorns is not subject to the ADA. Therefore, the Court should dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Under its Plain Terms, Title III Only Applies to Businesses that Operate a Physical Facility.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any *place of public accommodation*." 42 U.S.C. § 12182(a) (emphasis added). To state a claim under Title III, a plaintiff must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(a)).

Title III defines "public accommodation" by listing twelve categories collectively comprising almost seventy places, each a physical, "brick-and-mortar" establishment, as follows:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
> (B) a restaurant, bar, or other establishment serving food or drink;
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
> (G) a terminal, depot, or other station used for specified public transportation;
> (H) a museum, library, gallery, or other place of public display or collection;
> (I) a park, zoo, amusement park, or other place of recreation;
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). In turn, the Department of Justice's regulations define "place of public accommodation" to mean "a facility operated by a private entity whose operations affect commerce and fall within at least one" of twelve enumerated categories that are substantially the same as those contained in 42 U.S.C. § 12181(7). *See* 28 C.F.R. § 36.104.

The statute nowhere mentions a website, social media, or any online location in cyberspace. Notably, after passing the ADA in 1990, Congress amended it extensively, including in 2008 (long after the internet became ubiquitous), but has chosen not to add any non-physical or "cyber" element to the definition of "public accommodation."

6

The statute's plain terms leave no room for websites. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Milner v. Dep't of Navy*, 562 U.S. 562, 569 (2011). If statutory language is clear, courts "must enforce it according to its terms." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). Moreover, even if a statute such as the ADA is to be liberally construed, such a construction must nevertheless yield to the plain language of the statute. *See Grand Trunk W. R.R. Co. v. United States Dep't of Labor*, 875 F.3d 821, 830 (6th Cir. 2017).

Here, Section 12182(a) explicitly prohibits discrimination on the basis of disability in connection with "any *place* of public accommodation." (emphasis added). As one court explained, "[a]ny interpretation that extends the prohibition beyond physical places would render this statutory text utterly superfluous." *J.H. by & through Holman v. Just for Kids, Inc.*, 248 F. Supp. 3d 1210, 1216–17 (D. Utah 2017); *cf. Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994) ("To conclude ... that Title II [of the Civil Rights Act of 1964] covers organizations having no affiliation with any public facility would be tantamount to finding that an organization is a 'place.' Such an interpretation would be at odds with the express language of the statute."). Also, the statute lists only brick and mortar locations as public accommodations.

### B. A Strong Majority of Courts Holds that the ADA Only Applies to a Website If, at a Minimum, It Has a "Nexus" to a Physical Location.

The recent flood of website-accessibility lawsuits nationwide has produced some disagreement among the courts on whether the ADA applies to websites. This remains an "open question in the Second Circuit." *Del-Orden v. Bonobos, Inc.*, No. 17 CIV. 2744 (PAE), 2017 WL 6547902, at *4 (S.D.N.Y. Dec. 20, 2017).

7

Many courts hold that a website is simply never a place of public accommodation. *See, e.g., Zaid v. Smart Fin. Credit Union*, No. CV H-18-1130, 2019 WL 314732, at *6 (S.D. Tex. Jan. 24, 2019) (dismissing case; "[b]ecause a website is not a place of public accommodation under the ADA, [defendant] cannot be liable for its website's alleged failure to comply with the ADA"); *Just for Kids, Inc.*, 248 F. Supp. 3d at 1216–17; *Carroll v. Nw. Fed. Credit Union*, No. 1:17-CV-01205, 2018 WL 2933407, at *2 (E.D. Va. Jan. 26, 2018); *Anderson v. Macy's Inc.*, No. 2:12-CV-00556, 2012 WL 3155717, at *4 (W.D. Pa. Aug. 2, 2012) ("Since a website is not a physical accommodation, the Title III claim against Macy's Online must be dismissed."). These courts follow the plain language of the statute, which lists only brick and mortar establishments as public accommodations. *See id.*

In slight contrast, "the majority of Courts of Appeals that have addressed this issue require a 'public accommodation' to be an actual, physical space or have a nexus to an actual, physical space, such that stand-alone websites may not be considered "public accommodations." *Access Now, Inc. v. Blue Apron, LLC*, No. 17-CV-116-JL, 2017 WL 5186354, at *4 (D.N.H. Nov. 8, 2017); *see also Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-CV-23801, 2017 WL 1957182, at *3 (S.D. Fla. Feb. 2, 2017) ("[I]t appears that the majority of courts agree that websites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a physical space.").

Indeed, the Third, Fifth, Sixth, Ninth, and Eleventh Circuits have each held that Title III limits a "public accommodation" to actual, physical places. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–14 (6th Cir. 1997); *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 612–14 (3d Cir. 1998); *Magee v. Coca–Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 & 534 n.23 (5th Cir.

8

2016); *Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1318 (S.D. Fla. 2002) ("The Eleventh Circuit has recognized Congress's clear intent that Title III of the ADA governs solely access to physical, concrete places of public accommodation.") (citing *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002); *Stevens v. Premier Cruises, Inc.,* 215 F.3d 1237, 1241 (11th Cir. 2000)).[2]

The Ninth Circuit explained the basis for the majority view: All items listed in section 12181(7) "are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services." *Weyer,* 198 F.3d at 1114. The court continued, "The principle of *noscitur a sociis* requires that the term, 'place of public accommodation,' be interpreted within the context of the accompanying words, and this context suggests that some connection between the good or service complained of and an actual physical place is required." *Id.* The Third Circuit similarly explained, "The litany of terms . . . refer to places with resources utilized by physical access," and under *noscitur a sociis*, the terms should be interpreted by reference to the accompanying words of the statute 'to avoid the giving of unintended breadth to the Acts of Congress.'" *Ford,* 145 F.3d at 614 (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961). The Third Circuit concluded, "Accordingly, we do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to

---

[2] While the Fourth Circuit has not directly ruled on this issue, it affirmed in an unpublished opinion that under Title II of the Civil Rights Act, "chat rooms and other online services do not constitute a place of public accommodation." *Noah v. AOL Time Warner Inc.*, 261 F. Supp. 2d 532, 540 (E.D. Va. 2003), aff'd *Noah v. AOL-Time Warner, Inc.*, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004). Although *Noah* concerned Title II of the ADA, the reasoning applies to Title III as well—a website does not constitute a place of public accommodation. *See Carroll v. Nw. Fed. Credit Union*, No. 1:17-CV-01205, 2018 WL 2933407, at *2 (E.D. Va. Jan. 26, 2018).

be ambiguous as to their meaning." *Id.* at 614; *see also Parker*, 121 F.3d at 1014 (same); *Magee*, 833 F.3d at 534 n. 23 (same).[3]

Earlier this year, the Ninth Circuit reaffirmed in a *website accessibility case* that the ADA only covers "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services," and that there must be "some connection between the good or service complained of and an actual physical place" to state a claim under the ADA. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019) (quoting *Weyer,* 198 F.3d at 1114). In *Robles*, a blind customer sued Domino's Pizza, alleging that its website and mobile application for ordering pizza were not fully accessible to him in violation of ADA. The Court stated that the "nexus between Domino's website and app and physical restaurants . . . is critical to our analysis." *Id.* at 905. The court concluded that that "the ADA applies to Domino's website and app, which connect customers to the goods and services of Domino's physical restaurants." *Id.* at 905-06; *see also Haynes v. Dunkin' Donuts LLC,* 741 F. App'x 752, 754 (11th Cir. 2018) (finding that the plaintiff properly stated a claim because the alleged inaccessibility of Dunkin' Donuts' website denied him access to the services of the physical shops available on the website, including information about store locations and the ability to buy gift cards online).

---

[3] The Second Circuit's analysis in *Pallozzi v. Allstate Life Ins. Co.,* 198 F.3d 28, 32-33 (2d Cir. 1999), is in harmony with the majority view. There, the question was whether the ADA protected *only* a disabled person's right to physical access to a recognized place of public accommodation (addressing access to an insurance office, 42 U.S.C. § 12181(7)(F)). The Second Circuit held that Title III guaranteed the disabled "*more* than mere physical access" to the physical place of public accommodation, and includes access to goods and services provided by a place of public accommodation to be used *away* from it. *Id.* at 32 (emphasis added). Implicit in the court's reasoning was that a physical location is the minimum threshold requirement to implicate the ADA. The Second Circuit stated that its holding was in line with Third and Sixth Circuit (non-website) cases holding that "plaintiffs must have a nexus to a place of public accommodation in order to claim the protections of Title III." *Id.* at 32, n. 3 (citing *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006 (6th Cir.1997) (in banc); *Ford,* 145 F.3d 601).

In line with the Circuit courts' majority view, a legion of district courts has applied this reasoning in holding that a website unconnected to any physical location is not subject to the ADA. *See, e.g., Jancik v. Redbox Automated Retail, LLC*, No. SACV 13–1387–DOC (RNBx), 2014 WL 1920751, at *8–9 (C.D. Cal. May 14, 2014) (holding a website was not a place of public accommodation because it was not a physical place and there was not a sufficient nexus between the website and physical kiosks); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012), *aff'd*, 600 Fed. Appx. 508, 509 (9th Cir. 2015) (holding that Netflix's website is unconnected to any physical, concrete retail establishment and is therefore not a public accommodation under the ADA); *Ouellette v. Viacom*, No. CV 10–133–M–DWM–JCL, 2011 WL 1882780, at *4–5 (D. Mont. Mar. 31, 2011) (holding a website by itself is not a physical place and the plaintiff did not allege a sufficient connection between the website and a physical structure); *Young v. Facebook, Inc.*, 790 F.Supp.2d 1110, 1115 (N.D. Cal. 2011) (dismissing ADA claim against Facebook in part because "Facebook operates only in cyberspace, and is thus is not a 'place of public accommodation' as construed by the Ninth Circuit.").[4]

---

[4] *See also Earll v. eBay, Inc.*, No. 5:11–CV–00262–JF HRL, 2011 WL 3955485, at *2 (N.D. Cal. Sept. 7, 2011), *aff'd*, 599 Fed.Appx. 695, 696 (9th Cir. 2015) (holding that eBay's website is not a place of public accommodation under the ADA); *National Federation of the Blind v. Target Corporation*, 452 F.Supp.2d 946, 956 (N.D. Cal. 2006) (denying motion to dismiss and holding "that to the extent that plaintiffs allege that the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in [actual, physical] Target stores," the allegations stated a claim upon which relief could be granted); *Walker v. Sam's Oyster House, LLC*, No. CV 18-193, 2018 WL 4466076, at *2 (E.D. Pa. Sept. 18, 2018) ("in order to prevail plaintiff must allege that the injury he suffered on defendant's website prevented him from availing himself of the restaurant's goods and services"); *Buchholz v. Aventura Beach Assocs., Ltd.*, No. 17-23154-CIV, 2018 WL 318476, at *3 (S.D. Fla. Jan. 5, 2018); *Haynes*, 2017 WL 4863085 at *5 ("In the absence of allegations that Plaintiff's inability to use BrandsMartUSA.com impedes his access to one of Defendant's physical locations, the Amended Complaint must be dismissed."); *Haynes v. Pollo Operations, Inc.*, No. 17-CV-61003, 2018 WL 1523421, at *3 (S.D. Fla. Mar. 28, 2018); *Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d at 1321 (granting defendant's motion to dismiss because plaintiff failed to establish a nexus

Parting company with the majority position, the First and Seventh Circuits have read Title III to apply even in the absence of some connection to a physical place. *See Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England,* 37 F.3d 12, 19 (1st Cir. 1994); *Doe v. Mutual Omaha Ins. Co.,* 179 F.3d 557, 559 (7th Cir. 1999). A few district courts in this Circuit have reached the same conclusion concerning websites. *See, e.g., Markett v. Five Guys Enterprises LLC*, No. 17-CV-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017); *Andrews v. Blick Art Materials, LLC*, No. 17-CV-767, 2017 WL 3278898 (E.D.N.Y. Aug. 1, 2017).

This minority view, however, runs counter to the plain language of the statute. It also ignores the doctrine of *noscitur a sociis*. *See Weyer,* 198 F.3d at 1114. Further, the New York federal district court rulings have little value here. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 Moore's Federal Practice § 134.02[1][d]).

### C. Congress Amended the ADA During the Internet Era but Never Added Websites as a Public Accommodation.

Further compelling the conclusion that websites are not subject to the ADA is the fact that Congress has amended the ADA repeatedly during the internet era but has never specified websites as places of public accommodation. Noting that websites are not included in Section 12181(7)'s list of public accommodations, the Eastern District of Virginia explained,

> Not only is "website" not found on the list, but the statute does not list anything that is not a brick and mortar "place." Over the years Congress has extensively amended the ADA; *however, at no point did Congress choose to add websites as a public accommodation.*

---

between southwest.com and any restriction on the full enjoyment of a physical, concrete place of public accommodation).

12

*Carroll,* 2018 WL 2933407, at *2 (emphasis added).

Courts sometimes seek to broaden the ADA's reach to further the goal of eliminating discrimination.  *See, e.g., Andrews,* 268 F. Supp. 3d at 395.  The Southern District of Florida, however, cautioned, "As Congress has created the statutory defined rights under the ADA, it is the role of Congress, and not this Court, to specifically expand the ADA's definition of 'public accommodation' beyond physical, concrete places of public accommodation, to include 'virtual' places of public accommodation."  *See Access Now,* 227 F. Supp. 2d at 1321 n.13.

### D. Acorns' Website Is Not Subject to the ADA, and This Case Should Be Dismissed.

Title III of the ADA does not apply to Acorns' Website because it is not a "place of public accommodation."  Acorns does not operate any facility or physical location.  (*See generally* http://www.acorns.com, cited at Complaint, ¶ 6.)  Indeed, Plaintiffs do not allege that they were deprived of access to or goods or services of an Acorns' "brick and mortar" location— nor could they because none exists.  Plaintiffs only allege that deficiencies in the Website prevented them from accessing *online* content.  (Complaint, ¶ 29.)

Plaintiffs' failure to show that Acorns' website is a "place of public accommodation" or has a nexus to a physical location is fatal to their claim.  *See, e.g., Weyer,* 198 F.3d at 1114; *Ford,* 145 F.3d at 614.

## V. CONCLUSION

For these reasons, Acorns respectfully requests that the Court dismiss Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

ACORNS GROW, INC.

BY: _____/S/_____
Margaret A. Triolo *(ct08168)*
Mark R. Carta *(ct06645)*
CARTA, MCALISTER & MOORE, LLC
1120 Post Road, Post Office Box 83
Darien, Connecticut 06820
(203) 202-3107 (telephone)
(203) 202-3102 (facsimile)
MTriolo@CMM-Law.com
MCarta@CMM-Law.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2019, a copy of the foregoing Memorandum of Law in Support of Motion to Dismiss was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

>             */S/ (ct08168)*
> Margaret A. Triolo